1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY VAN WINKLE,                          No. C 05-2524 CW

        Petitioner,                    ORDER DENYING
                                             PETITION FOR WRIT
   v.                                      OF HABEAS CORPUS

A.P. KANE, Warden,

        Respondent.

_____/

    Petitioner Anthony Van Winkle, an inmate incarcerated at
Correctional Training Facility (CTF) in Soledad, California,
petitions for a writ of habeas corpus under 28 U.S.C. § 2254 on the
grounds that the Board of Parole Hearings (Board)[1] denied him a
parole date by improperly considering his commitment offense, by
failing to rely on some evidence as grounds for a denial of a
parole date, and by following an illegal no-parole policy towards
inmates serving indeterminate life sentences.  Respondent A.P.

_____

[1] Formerly known as the Board of Prison Terms.

Kane, Warden of CTF, opposes the petition.  Having considered all of the papers filed by the parties, the Court DENIES Petitioner's petition for a writ of habeas corpus.

BACKGROUND [2]

I. Commitment Offense

In 1991, Petitioner plead guilty to a charge of a violation of California Penal Code § 187(a), murder in the second degree, with a firearm enhancement.  Petitioner was living and manufacturing methamphetamines with the victim.  The victim forced Petitioner to move out after they had a dispute.  Petitioner convinced another person to drive him to the victim's house in order to pick up some clothes.  When they arrived, they found the victim lying on the couch.  Petitioner kicked the victim in the face, then shot him in the head.  Petitioner admitted aiming the gun at the victim, but denied that he intended to shoot him.  Petitioner and the other person who witnessed the shooting ran out of the victim's apartment.  Petitioner grabbed a knapsack on the way out.  He did not seek to aid the victim, who died days later.  Respondent. Ex. 8 at 1, Sheriff's Crime Report.  Petitioner instructed the witness not to tell anyone about the shooting, and sought to avoid capture for a few weeks.  Petitioner claimed to have been under the influence of methamphetamines at the time of the killing.  He was sentenced to eighteen years to life in state prison, and was

_____

[2] Unless indicated otherwise, the following facts are taken from the state superior court's unpublished opinion denying Petitioner's direct appeal.  Resp.'s Ex. 2, In the Matter of Anthony Vanwinkle on Habeas Corpus, Case No. SWHSS-6072 (State Court Order).

United States District Court
For the Northern District of California

received by the Department of Corrections on August 29, 1991.

II.   Parole Hearing

On August 25, 2004, Petitioner attended his second parole hearing.  The Board considered the factors which favored a grant of a parole date.  Since he has been in prison, Petitioner completed his GED, obtained a certificate in lead abatement work, and learned how to do electrical work in construction.  He engaged in self help programs such as Alcoholics Anonymous, anger management and group therapy.  He maintained a good prison record: in thirteen years he received no 115s and only one 128[3] for unauthorized alteration of a glove.  His prison psychiatric report assessed him as posing no more danger of violence than the average citizen.  His file contained letters of support from his family which offered to employ him in one of two family businesses if he were released on parole.  The Board also considered factors favoring a denial of a parole date.  Petitioner had a substantial criminal drug and gun history and an unstable family relationship.  The San Bernardino County Sheriff's Office and District Attorney wrote letters opposing Petitioner's release.  The District Attorney focused on Petitioner's previous criminal record of guns and drugs, and the possibility that robbery was the motive for the homicide that Petitioner committed.

The Board decided that Petitioner was unsuitable for parole. The Board based this finding, in part, on a determination that the

---

[3] A 115 refers to a serious disciplinary problem, and a 128 refers to a minor disciplinary problem.  See Cal. Code Regs. tit. 15, § 3312.

**United States District Court**
For the Northern District of California

killing was committed in an especially cruel manner.  In addition, the Board noted that Petitioner had been engaged in the manufacture of drugs, that he had an unstable social history and an escalating history of convictions involving guns, and that he lacked sufficient vocational training.  The Board concluded that there were positive factors favoring a grant of a parole date, but that these did not outweigh the factors favoring a finding of unsuitability.  The Board denied Petitioner's parole date for one year.  Resp.'s Ex. 5 at 63:12, Transcript of Parole Consideration Hearing.  The Board recommended that in the following year Petitioner remain free from discipline problems, sign up for more vocational training classes, and "cooperate with clinicians in the completion of a new clinical evaluation."  Id. at 65:20-24.

III. State Habeas Petition

On November 4, 2004, Petitioner filed in the San Bernardino Superior Court a petition for a writ of habeas corpus based on his parole denial.  In support of his contention that he was denied due process, he made the same three arguments that he now makes in this Court.

The state court relied primarily on In re Rosenkrantz, 29 Cal. 4th 616 (2002).  The court interpreted Rosenkrantz to require that the Board grant a parole date, "unless the Board finds in the exercise of its discretion that the applicant is unsuitable." Respondent. Ex. 2 at 3, State Court Order, Case No. SWHSS-6072 (emphasis in original).  The court was limited "to a determination of whether there is 'some evidence' in the record to support the decision" and "this standard of 'some evidence' is extremely

deferential." <u>Id.</u>  The state court concluded that the Board relied not only on Petitioner's commitment offense, but also on his escalating pattern of criminal conduct and his unstable social history, and therefore there was some evidence to support the Board's finding that Petitioner was unsuitable for parole.

The court interpreted <u>Rosenkrantz</u> also to require that the Board consider the prisoner's background, institutional participation, post-parole plans, and psychological evaluations, but to allow the Board to base a finding of unsuitability solely on the nature of the prisoner's commitment offense.  The court found that "the Board did consider the positive factors which favored parole and made its finding that these did not outweigh the factors surrounding the circumstances of the crime."  In <u>Rosenkrantz</u>, 29 Cal. 4th at 685-86, the court held that statistics which showed a very low rate of parole dates granted by the Board were insufficient evidence to establish a blanket no-parole policy or that the petitioner's parole hearing was tainted by a no-parole policy.  On this authority, the superior court denied the petitioner's claim based on the Board's alleged no-parole policy. Thus, the <u>Rosenkrantz</u> court denied the petition for a writ of habeas corpus.

After the superior court denial, Petitioner here filed a petition for a writ of habeas corpus with the California court of appeal and with the California Supreme Court, both of which were denied.

LEGAL STANDARD

This Court may entertain a petition for a writ of habeas

5

corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended section 2254 to limit the ability of district courts to grant habeas relief only when a state court proceeding resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123, 1128-29 (9th Cir. 2006).  A district court must presume that all factual findings of the state court are correct.  28 U.S.C. § 2254(e)(1).  The district court is to review the decision of the highest state court that issued a reasoned opinion.  <u>Lajoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, the last reasoned opinion was issued by the San Bernadino Superior Court.

I.  Liberty Interest in Parole

There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979).  However, if a state's statutory parole scheme uses mandatory language, it may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a

6

constitutionally protected liberty interest.  <u>Greenholtz</u>, 442 U.S.
at 11-12.  The Supreme Court held that the Nebraska parole statute
providing that the board "shall" release prisoners, subject to
certain restrictions, creates a due process liberty interest in
release on parole.  <u>Id.</u>; <u>see also</u>, <u>Board of Pardons v. Allen</u>, 482
U.S. 369, 376-78 (1987) (Montana parole statute providing that
board "shall" release prisoner, subject to certain restrictions,
creates due process liberty interest in release on parole).  In
such a case, a prisoner gains a legitimate expectation in parole
that cannot be denied without adequate procedural due process
protections.  See <u>Allen</u>, 482 U.S. at 373-81; <u>Greenholtz</u>, 442 U.S.
at 11-16.

California's parole scheme uses mandatory language:

> The panel or board shall set a release date unless it
> determines that the gravity of the current convicted offense
> or offenses, or the timing and gravity of current or past
> convicted offense or offenses, is such that consideration of
> the public safety requires a more lengthy period of
> incarceration for this individual, and that a parole date,
> therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).  Accordingly, under the clearly
established framework of <u>Allen</u> and <u>Greenholtz</u>, "California's parole
scheme gives rise to a cognizable liberty interest in release on
parole.  The scheme creates a presumption that parole release will
be granted unless the statutorily defined determinations are made."
<u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002).  This is
true regardless of whether a parole release date has ever been set
for the inmate, because "[t]he liberty interest is created, not
upon the grant of a parole date, but upon the incarceration of the
inmate."  <u>Biggs v. Terhune</u>, 334 F.3d 910, 914-15 (9th Cir. 2003);

7

United States District Court
For the Northern District of California

1   cf. McQuillion, 306 F.3d at 903 (finding decision to rescind

2   previously-granted parole release date implicated prisoner's

3   liberty interest).  The Ninth Circuit recently made clear that

4   "California inmates continue to have a liberty interest in parole

5   after In re Dannenberg, 34 Cal. 4th 1061, 1070 (2005)."  Sass v.

6   California Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006)

7   (finding that Dannenberg did not explicitly or implicitly hold that

8   there is no constitutionally protected liberty interest in parole,

9   but upholding trial court's denial of petition because it was not

10  contrary to, nor an unreasonable application of, clearly

11  established federal law).

12      Because California prisoners have a constitutionally protected

13  liberty interest in release on parole, the parole board cannot

14  decline to grant a parole date without adequate procedural

15  protections necessary to satisfy due process.  Irons v. Carey, 479

16  F.3d 658, 662 (9th Cir. 2007).

17  II.  Procedural Due Process Protections

18      The Supreme Court has clearly established that a parole

19  board's decision deprives a prisoner of due process if the board's

20  decision is not supported by "some evidence in the record," or is

21  "otherwise arbitrary."  Id.; see McQuillion, 306 F.3d at 904

22  (adopting, for review of parole hearings, "some evidence" standard

23  used for disciplinary hearings as outlined in Superintendent v.

24  Hill, 472 U.S. 445, 455-56 (1985)); Jancsek v. Oregon Bd. of

25  Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  The "some evidence"

26  standard identified in Hill is clearly established federal law in

27  the parole context for AEDPA purposes.  McQuillion, 306 F.3d at

28                                  8

United States District Court
For the Northern District of California

904.  The evidence underlying the board's decision must have some indicia of reliability.  Id.

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant State.  Irons, 479 F.3d at 662.  Accordingly, in California, the district court must look to California law to determine what findings are necessary to deem a prisoner unsuitable for parole, and then must review the state court record in order to determine whether the holding that the Board's findings were supported by "some evidence" constituted an unreasonable application of the principle articulated in Hill, 472 U.S. at 454.  Irons, 479 F.3d at 662-64.

The court may find that there has been a violation of due process if the Board has relied on the prisoner's commitment offense over the course of many parole hearings in order to find that he was unsuitable for parole.  Biggs, 334 F.3d at 916-17.  "A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Id.  In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole."

9

United States District Court
For the Northern District of California

1  Id.

2      In Irons, the Ninth Circuit cited Biggs, but noted that all of

3  the cases in which it had previously held that a denial of parole

4  based solely on the commitment offense comported with due process

5  involved situations where the prisoner had not yet served the

6  minimum number of years set in his sentence.  Irons, 479 F.3d at

7  665.  In Sass and Irons, the Ninth Circuit also noted that the

8  parole board appeared to give little or no weight to evidence of

9  the prisoner's rehabilitation, and stated its "hope that the Board

10  will come to recognize that in some cases, indefinite detention

11  based solely on an inmate's commitment offense, regardless of the

12  extent of his rehabilitation, will at some point violate due

13  process."  Irons, 479 F.3d at 665.

14  III. Mitigating and Aggravating Factors

15      The California Supreme Court summarized the standards which

16  the Board is to use in determining whether a prisoner is suitable

17  or unsuitable for parole.

18          [C]ircumstances tending to establish unsuitability for parole
            are that the prisoner (1) committed the offense in an
19          especially heinous, atrocious, or cruel manner; (2) possesses
            a previous record of violence; (3) has an unstable social
20          history; (4) previously has sexually assaulted another
            individual in a sadistic manner; (5) has a lengthy history of
21          severe mental problems related to the offense; and (6) has
            engaged in serious misconduct while in prison.  Cal. Code
22          Regs. tit. 15, § 2402(c).

23          The regulation further provides that circumstances tending to
            establish suitability for parole are that the prisoner:
24          (1) does not possess a record of violent crime committed while
            a juvenile; (2) has a stable social history; (3) has shown
25          signs of remorse; (4) committed the crime as the result of
            significant stress in his life, especially if the stress has
26          built over a long period of time; (5) committed the criminal
            offense as a result of battered woman syndrome; (6) lacks any
27          significant history of violent crime; (7) is of an age that

28                                    10

reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.  Cal. Code Regs. tit. 15, § 2402(d).

[T]he regulation explains that the foregoing circumstances 'are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.'  Cal. Code Regs. tit. 15, §§ 2402(c), (d).  In sum, the governing statute provides that the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction.

Rosenkrantz, 29 Cal. 4th at 653-654.  The California Supreme Court further explained that

Factors that support a finding that the prisoner committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  Cal. Code Regs. tit. 15, § 2402(c)(1).

Id. at 654 n.11.

DISCUSSION

I.   Some Evidence

Petitioner argues that he did not receive due process because the Board's decision was not supported by some evidence that he was unsuitable for parole.

A.   Reliance on Commitment Offense

Petitioner argues that the Board violated his due process

11

United States District Court
For the Northern District of California

1  rights because it relied solely on his commitment offense.[4]  He

2  argues that under Irons, 479 F.3d at 664, the decision of the Board

3  to deny parole based solely on the commitment offense is a due

4  process violation because, based on his calculation, he has served

5  the minimum time to which he had been sentenced.  Petitioner also

6  argues that the Board failed to provide some evidence to support

7  its finding that his commitment crime was exceptionally callous.

8  Finally, Petitioner argues the Board violated state law by relying

9  on his commitment offense, because it was not particularly

10  egregious and Dannenberg, 34 Cal. 4th at 1094-95, held that a

11  denial of parole is appropriate only in cases in which the

12  "underlying offense [was] particularly egregious."

13      Petitioner's argument that it is improper to deny parole based

14  solely on his commitment offense once he has served the minimum

15  time imposed by his sentence fails.  First, in Irons, the Ninth

16  Circuit held only that based on the specific facts of the cases

17

18      [4] Petitioner argues that the parole board may only consider
his commitment offense at the first hearing and in support cites
19  Masoner v. California, 2004 U.S. Dist. LEXIS 9222, *1 (C.D. Cal.).
Masoner had been sentenced to fifteen years to life based on a
20  conviction for second degree murder.  He had driven his vehicle
while he had a blood alcohol level of .26% and crashed into a
21  house, killing a little girl.  He had a spotless prison record, had
completed vocational training and rehabilitation programs, and had
22  served more years than the minimum for his offense.  The district
court held that "although the gravity of the commitment offense and
23  other pre-conviction factors alone may be sufficient to justify the
denial of a parole date at a prisoner's initial hearing, subsequent
24  [Board] decisions to deny a parole date must be supported by some
post-conviction evidence that the release of an inmate is against
25  the interest of public safety."  Id. at *3-4.  However, the
argument that the Board may only consider the commitment offense at
26  the first hearing is undermined by the holding of Irons, 479 F.3d
at 665 (affirming fifth parole denial based on commitment offense),
27  and Sass, 461 F.3d at 1125 (affirming third parole denial based on
commitment offense).

28                                    12

United States District Court
For the Northern District of California

that had been before it, there was no due process violation when
the prisoners in those cases had not served their minimum time.
Second, Petitioner has based his calculation on the California Code
of Regulations, title 15 §§ 2403-10, which requires the Board to
"set a base term for each life prisoner who is found suitable for
parole," to calculate post-conviction credits, and then calculate a
parole date.  Based on these regulations, Petitioner has calculated
that he has served the minimum time to which he had been sentenced.
However, in <u>Irons</u>, the Ninth Circuit was not considering the base
term calculations of sections 2403-2410, but rather was considering
the minimum time imposed by the trial court at sentencing.  Because
the Board did not find Petitioner suitable for release, it was
under no obligation to set a base term or apply post-conviction
credits.  <u>Dannenberg</u>, 34 Cal. 4th at 1078-1079.  Petitioner was
sentenced to eighteen years to life, and at the time of the hearing
that he contests, he had served only thirteen years.  Therefore,
the language in <u>Irons</u> which distinguishes between those parole
denials before and after minimum time had been served is not
applicable.  Further, the state court found that the Board relied
not only on Petitioner's commitment offense, but also on his
escalating pattern of criminal conduct and his unstable social
history.  This finding is supported by the record of Petitioner's
parole hearing.  Resp.'s Ex. 5 at 63-65.  For this reason,
Petitioner's state law argument also fails because <u>Dannenberg</u>, 34
Cal. 4th at 1076, refers to parole board decisions which rely
solely on the underlying offense.

The Board must rely on some evidence to support its conclusion

13

that a petitioner's crime was exceptionally callous and beyond the
normal range of second degree murder.  In re Smith, 114 Cal. App.
4th 343, 367 (2003).  In Smith, a California appellate court
granted a petition for a writ of habeas corpus where the Governor
reversed a decision of the Board granting a parole date.  The Smith
court found that the Governor had determined, without the support
of some evidence, that Smith's crime was exceptionally callous.
The court decided this, in part, by comparing the facts of Smith's
case with other cases in which the commitment offense was
determined to be exceptionally callous.  Smith shot his wife in
anger after she confessed to having an affair.  He showed remorse
by immediately going to his church and asking others to pray for
his victim and to turn him in to the police.  The court noted that
although Smith's crime was callous, so were all murders, and there
was no evidence that it was exceptionally callous.

Here, Petitioner's commitment offense is more callous than
Smith's.  The state court described the Board's finding that
Petitioner's commitment offense was exceptionally callous as
follows:

> The Board concluded that the killing was done in such a manner
> as to demonstrate a total disregard for the victim's life.
> The Board made this finding based on the facts and
> circumstances of the killing.  These facts and circumstances
> certainly provide "some evidence" in support of the
> conclusions of the Board.
>
> When the petitioner entered the victim's home, the victim was
> lying on the couch and the petitioner without any kind of
> provocation kicked the victim in the face and then shot him in
> the head.  Apparently the petitioner and victim had a dispute
> over their enterprise of manufacturing methamphetamine.

Resp.'s Ex. 2 at 3, State Court Order, Case No. SWHSS-6072.

14

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Because Petitioner had not yet served the minimum time to

2  which he had been sentenced, the Board did not rely solely on his

3  commitment offense, and the Board had some evidence that his

4  commitment offense was exceptionally callous, it was not an

5  unreasonable application of federal law for the state court to

6  conclude that the Board relied on some evidence in finding

7  Petitioner to be unsuitable for parole.

8    B.   Positive Factors

9    Petitioner claims that the Board failed to consider evidence

10 of the factors which favored a finding that he was suitable for

11 release.  However, the state court found that the Board did

12 consider the positive factors, but found that they were outweighed

13 by the factors favoring a finding of unsuitability.  Respondent.

14 Ex. 2 at 3, State Court Order, Case No. SWHSS-6072.  Title 15,

15 section 2402(d) of the California Code of Regulations allows the

16 Board to weigh the relative importance of the factors favoring a

17 finding of suitability with the factors favoring a finding of

18 unsuitability.  Therefore, it was not an unreasonable application

19 of federal law for the state court to find that the Board

20 considered the factors which favored Petitioner's release.

21    Based on all of these factors, the state court was not

22 unreasonable in finding that the Board correctly applied the "some

23 evidence" standard and considered all relevant factors, and thus

24 did not violate Petitioner's due process rights.

25 III. Policy Against Granting Parole

26    Petitioner argues that he did not receive individualized

27 consideration, because the Board's findings were a post hoc

28                                    15

rationalization for a decision that it had already made under a no-parole policy.  Based on this alleged no-parole policy, Petitioner argues that his due process and equal protection rights have been violated.

To support his contention that the Board has a no-parole policy, Petitioner presents statistics that the Board has granted parole in only two percent of the cases that it has heard.  In his traverse, Petitioner cites <u>Coleman v. Board of Prison Terms, et al.</u>, 2004 U.S. Dist. LEXIS 29929, *12 (E.D. Cal.), a habeas case in which the court found that the prisoner "presents a convincing case that a blanket policy against parole for murderers prevented him from obtaining a parole suitability determination made after a fair hearing."  However, in <u>Coleman</u>, the remedy for the finding of a systemic bias against granting a parole date was an order that the petitioner was to receive a hearing before an unbiased parole board.  <u>Id.</u> at *12-13.

In <u>Rosenkrantz</u>, 29 Cal. 4th at 683-86, the California Supreme Court rejected claims alleging that the Board or the Governor had either a no-parole policy or a policy of interpreting the parole statute in an improperly narrow manner.  It held that there was sufficient evidence of individualized consideration of parole hearings and of actual grants of parole to undermine the claim that there is an illegal no-parole policy.  <u>Id.</u>  In addition, the court reasoned that statistical data showing a low rate of grants of parole is insufficient to establish that the Governor or the Board has a no-parole policy.  <u>Id.</u> at 685-86.

There is no evidence that Petitioner's hearing was biased by a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

no-parole policy, or that his parole denial was caused by such a policy.  The Board considered all the evidence presented and found that Petitioner was unsuitable for parole based upon a reasoned determination.  Therefore, the state court did not unreasonably apply federal law in denying Petitioner's claim of a no-parole policy.

CONCLUSION

For the forgoing reasons, Petitioner's petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

Dated: 8/21/07

CLAUDIA WILKEN
United States District Judge

17

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VANWINKLE,

              Plaintiff,

   v.

KANE et al,

              Defendant.

_____/

Case Number: CV05-02524 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 21, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony E. VanWinkle
H-07652
Correctional Training Facility
P.O. Box 689, F-Wing-324
Soledad,  CA 93960-0689

Patricia Webber Heim
Attorney at Law
455 Golden Gate Avenue, Suite 11000
San Francisco,  CA 94102-7004

Dated: August 21, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California

18